UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

AUG 0 1 2019

David J. Bradley, Clerk of Court

RAYMOND L.CAVITT,JIMMY BLACK
JUSTIN D. BUXTON,HARRY F.KERLEY,
KENNETH TAYLOR,
                Plaintiffs,

vs.

LORI DAVIS.(Director),CYNTHIA
TILLEY (Unit Warden),TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
              Defendants.

PLAINTIFF'S ORIGINAL 1983 PETITION
PRELIMINARY INJUNCTION INCORPORATED

TO THE HONORABLE JUDGE OF SAID COURT:

    Now comes Raymond L.Cavitt,Jimmy Black,Justin D.Buxton,Harry Kerley, and Kenneth Taylor (PLAINTIFFS) to file this Petition PRO SE in the above styled civil action, moves this HONORABLE Court to GRANT this PRELIMINARY INJUNCTION.

Plaintiffs intend to show, that TIME IS OF THE ESSENCE because Plaintiffs are being exposed to LONG-TERM,SYSTEMIC,REPEATED, and CONTINUAL conditions of confinement,that pose risk that are inconstant with their physical afflictions and capabilities. In addition, these Defendants are demonstrably unlikely to implement the required changes without this Court's SPUR!!!!

Plaintiffs also plea, that this pro se petition be reviewed by a standard LESS STRINGENT than those applied to a formal pleading drafted by a Lawyer.

In support of the above,Plaintiffs will show the following.

1.

## JURISDICTION AND VENUE

Jurisdiction is conferred upon this Court prusuant to:

28 U.S.C.§ 1331,§ 1343,§ 2201, 42 U.S.C.§ 1983, DECLARATORY

JUDGMENT ACT.

This District Court is the approprate VENUE because a substantial

part of the events or omissions giving rise to this Court

occured in this Judicial District.


## PARTIES TO THIS CAUSE OF ACTION

RAYMOND L.CAVITT T.D.C.J. # 1897462 (Lead Plaintiff).

Is an Offender assigned to the Jester-3 unit operated by the

Texas Department of Criminal Justice (T.D.C.J.)

JIMMY BLACK T.D.C.J. # 1617017 (Plaintiff).

Is an Offender assigned to the Jester-3 unit operated by T.D.C.J..

JUSTIN D.BUXTON T.D.C.J. # 2027038 (Plaintiff).

Is an Offender assigned to the Jester-3 unit operatee by T.D.C.J..

HARRY KERLEY T.D.C.J. # 895775 (Plaintiff).

Is an Offender assigned to the Jester-3 unit operated by T.D.C.J..

KENNETH TAYLOR T.D.C.J. # 828757 (Plaintiff).

Is an Offender assigned to the Jester-3 unit operated by T.D.C.J...

At all times relevant,these Plaintiffs were in the care and custody

of T.D.C.J. and subject to all rules,policies,procedures and

guidelines. Plaintiffs and other similary situated Jester-3

Offenders,are qualified individuals regarded as having a mental

or physiological impairment, that substantially limits one or

more of their major life activities.

**LORIE DAVIS:**(Defendant).

Is the Executive Director of T.D.C.J.

As such,Ms.Davis is the Commanding Officer of all T.D.C.J. Guards,
Correctional Officers and T.D.C.J. Employees and Contractors.

She is responsible for their training,supervision and conduct.

She also reviews and approves all T.D.C.J. policies,procedures,
rules and guidelines.

As a matter of law,she is responsible for protecting the constitutional
rights of all persons held in T.D.C.J. custody.

At all times described herein, Ms.Davis was acting under the color
of Texas State Law.

Ms.Davis is being sued in her **OFFICIAL CAPACITY.**

**CYNTHIA TILLEY:** (Defendant).

Is the head Warden of the Jester-3 Unit.

Ms.Tilley is responsible for ensuring that Consitiutuional
conditions of confinement exist at the Jester-3 unit.

Any unsafe or dangerous condition that she lacks the authorty
or resource to correct,must be reported to a higher authorty within
T.D.C.J. She is being sued in her **OFFICIAL** and **INDIVIDUAL CAPACITY.**

**THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE:** (Defendant).

Is a State Agency and at all times operated the Jester-3 Unit.

Jester-3 is a Public Facility with programs and services that
Plaintiffs and other Offenders are qualified for.

T.D.C.J. is a  recipient of Federal Funds.

3.

## DAMAGES OR OTHER CLAIMS OF RELIEF

For legal elements of damages accuring to Plaintiffs, Plaintiffs
seeks one or all of the following:
PROSPECTIVE, INJUCTIVE, EQUITABLE relief.
Plaintiff also seeks DECLARATION of RIGHTS.
Plaintiff does not seek, but will accept, any CORRECTIVE or PUNITIVE
damages assessed by this Court.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Even though the Grievance System available to Plaintiffs is
UNFAIR, BIAS, INADEQUATE, FUTILE and a complete "FAUCES",
Plaintiff complied with Federal law and submitted a thorough
and detailed account of the issues raised in this cause of action.
To date, Plaintiffs have not received an Official responce to
these complaints.
However, as a matter of clearly established Federal law,
when Plaintiffs seek a PRELIMINARY INJUNCTION due to an
emergency or dangerous prison condition, that may cause
IRREPARABLE HARM, this Court can wait for Plaintiffs to
Exhaust the grievance process and still protect Plaintiffs
with a Preliminary Injunction. SEE JACKSON vs. DISTRICT OF
COLUMBIA, 254 F.3d, (D.C. Cir. 2001).
Plaintiff assures the Court that they will complete the Grievance
Process during this litigation.

4.

## DECLARATION OF FACTS

I Raymond L.Cavitt T.D.C.J. #1897462,being presently confined
at the Jester-3 unit,Richmond,Texas,in a prison facility operated
by the Texas Department of Criminal Justice,under the penalty of
perjury do state,that I am over 21 years of age and of sound mind.
All of the above and forgoing are **TRUE** and **CORRECT** to the best
of my knowledge and belief.

EXCUTED ON THIS 30th. DAY OF JULY 2019

RAYMOND L. CAVITT #1897462

*Raymond L. Cavitt 1897462.*

## PLAINTIFF'S PREVIOUS FILLINGS

Raymond L.Cavitt, has a current state civil suit against T.D.C.J.
in Regards to lost or damaged property,this suit is still pending.
Mr.Cavitt can not remember if he had any filings in the 70s or 80s
while in T.D.C.J..

Harry Kerley,currently has a state civil action against T.D.C.J
for missing personal property.

He does not know the status of this case.

Justin Buxton has no previous filings.

Jimmy Black,has no previous filings.

Kenneth Tayolr is a prolific filer of civil suits against T.D.C.J.
Officials 3;17-cv-0358 Heat Litigation he failed to get relief,
3;18-cv-0394 Denial of medical treatment(Still Pending),

He stated that he has at least 3 more but due to his strokes
he can't remember any details.

5.

## OPENING STATEMENT

Plaintiffs conceed, that prison life is not meant to be like
**"A STAY IN A HOLIDAY INN"**, and under both the United States and
Texas Constitutions, conditions may be **"RESTRICTIVE"** and even
**"Harsh"**.

This is the penalty that the Plaintiffs must pay for Offending
the laws of the **GREAT STATE OF TEXAS**.

However, under both constitutions, they **CLEARLY PROHIBIT**
prison conditions that may deprive Offenders of **"BASIC HUMAN NEEDS"**.
**SEE 8th-AMENDMENT of the U.S. CONSTITUTION, VERNON'S CONSTITUTION
of the STATE of TEXAS at 1§13 (30).**

It is well established, that one of these basic human needs is
**"MEDICAL CARE" SEE ESTELLE vs. GAMBLE 429 U.S. 97,104** (1976).[This
was a "LANDMARK" ruling involving T.D.C.J], **VERNON'S TEXAS
GOVERNMENT CODE 501.146.**

As a matter of law, Prison Officials must provide care that is
medically approriate and adequate for and Offender's **DIAGNOSED
SERIOUS MEDICAL CONDITIONS.**

Plaintiff now contends, that medical care in prison must consist
of much more than diagnoses,medication,physical therapy, or any
other form of professional treatment administered by Prison
Health Care Providers.

In addition,Medical Providers and Prison Officials are also
obligated to insure, that Offenders with diagnosed serious medical
conditions, be provided with an **"ENVIRONMENT"** that is **"CONDUCIVE"**
to the healing process, or at the least,attempt to alleviate
prison conditions that could significantly aggravate those ailments.

Prison Officials must exclude Offenders from work,housing or any other prison condition which could result in injury or the unnecessary and wanton infliction of pain or suffering due to an Offenders diagnosed serious medical conditions.

SEE JACKSON **vs.** CAIN 864,**f2d.**,1235, RAY **vs.** MABRY 544, **f2d.**, 881, McCORD **vs.** MAGGIO 927, f2d. 847-849. SEE T.D.C.J. HEALTH SERVICE POLICY MANUAL A-08.4,D-27.2,E-34.1

T.D.C.J. CLASSIFICATION PLAN MANUAL Page 13 (1) Intake,Page 15 E.(1) FARMER **vs.** BRENNAN 511,U.S. 114,S.CT.,1970,1988,128 L.ED.2D.,811 827 (1994), GATES **vs.**COOK f3d,339,340, HERMAN **vs.**HOLIDAY 238,f3d. 660 at (1),(5),(8) EMPHASIS ADDED !!!!.

HOWEVER!!! There are instances where Prison Official suffer from the corrupting influnce of **"UNCHECKED AUTHORITY"** and feel that their conduct is above the law.

This is when it is up to the Courts to bring their actions back into compliance with State and or Federal Law. SEE RUIZ **vs.**ESTELLE 161, f3d.,814.[This is also a"LANDMARK"case involving T.D.C.J.]

It is well established, that this Court can scrutinize any prison condition that may present a serious or immediate threat to an Offender's health or safety. SEE CAMPBELL **vs.** BETO, 460,f2d.,765, 768 (5th.Cir.TEXAS 1972).[This is a case involving T.D.C.J.]

Plaintiffs bring this suit as yet another chapter in a long saga of challenges to conditions of confinement within the Texas Department of Criminal Justice.

Plaintiffs will show the following:

## PLAINTIFF'S STATEMENT OF FACTS

Plaintiffs are Offenders located at the Jester-3 Unit which is a prison unit operated by the Texas Department of Criminal Justice. (T.D.C.J.).

Plaintiffs allege violations of the Eight (8) Amendment of the U.S. Constitution, the Americans with Disabilities Act, and the Rehabilitation Act due to the high temperatures in their housing areas.

Plaintiffs seek INJUNCTIVE and DECLARATORY relief ONLY.

If approved by the Court, Plaintiffs also request APPOINTMENT of COUNSEL and CLASS ACTION STATUS.

In 2014 four (4) Offenders at the Wallace Pack Unit operated by T.D.C.J. filed suit seeking relief from the extreme heat conditions which existed in their housing areas. SEE COLE vs. COLLIER 4:14-cv-1698. This cause of action is significant and vital to this complaint because, the Wallace Pack unit's housing areas in their main building are designed under the same blueprint as the main building at Jester-3. (The layout of the HOUSING AREAS are almost identical)

Plaintiffs also contend, that the same extreme heat conditions that existed on the Wallace Pack unit in 2014 also existed on the Jester-3 unit and in fact still exist here today (July 2019).

In addition, the same alledged heat mitigation measures that were inplace at the Wallace Pack unit during it's litigation also is required on the Jester-3 unit.

In addition, the Jester-3 unit houses the same type of old, sick, handicapped and heat sensitive Offenders that were assigned to the Wallace Pack unit.

Plaintiffs contend , that due to the **STRIKING RESEMBLANCE** and
similar circumstances of this cause of action to, the Wallace
Pack unit litigation, the value of the findings in the preliminary
injunction under COLE vs. COLLIER should serve as a **"TEMPLATE"**
in this litigation.

Even though,the Defendant's in the COLE litigation settled this
case and all Parties agreed,that there were no admissions or evidence
of any violation of any federal or state statue,rule or regulation,
principle of common law or equity or of any liability of wrongdoing
whatsoever;does not prevent Plaintiffs from citing the rulings made
in COLE **vs.** COLLIER as authority.

As a matter of law,settling a claim while the interlocutory appeal
challenging the preliminary injunction is still pending,eliminates
any risk of appellate ruling that might curtail or contradict
aspects of the Court's decision or analysis.SEE BALL **vs.** LeBLANC
881 F.ed,346 (5th.Cir. 2018).

There is no dispute, that the Court in the Cole litigation, made
thorough investigation of the facts and circumstances surrounding
the allegations asserted in that cause of action.

The Court engaged in extensive discovery and considered the laws
applicable to this Claim and entered a preliminary injunction on
the merits of that claim finding,that the Plaintiffs were
**"SUBSTANTIALLY"** likely to prevail at trial.

In addition,the Honorable Scott Brister of the Texas Supreme
Court (Retired) participated in mediation sessions and discussed
and explored at length,the legal and factual issues in the Cole
litigation and found merit in this claim.

Plaintiffs respectfully ask this Court to review and consider the
conditions of confinement that existed on the Wallace Pack unit
at the time of the granting of the preliminary injunction and
compare them to the current conditions  that now exist on the Jester-3
Unit. SEE COLE **vs.** LIVINGSTON 4;14-cv-1698 ORIGINAL PETITION.
First, there was little dispute,that the heat in the housing areas
on the Wallace Pack unit during the summer months could violate
Offenders constitional rights to conditions of confinement that
are free from a substantial risk of serious harm or injury.
The parties' dispute focused on the effectiveness of T.D.C.J.'s
mitigation measures, which included the constant provision of
ice water,fans,cool-down showers and access to respite areas in
reducing the risk of harm or injury to an acceptable level.
Plaintiffs contend ,that there should be no dispute,that extreme
heat conditions do currently exist on the Jester-3 unit.
In fact, temperature extremes on the Jester-3 unit are more
dangerous and pronounced than found on the Wallace Pack unit due
to the higher relative humidity.SEE **NATIONAL WEATHER HEAT INDEX CHART**
In regards to the heat mitigation measures that were in place on
the Wallace Pack unit, the Court found the following:
**ICE WATER:**
The Court found , that there was no dispute, that T.D.C.J. provided
all housing areas with ice water 24 hours a day,7 days a week and
365 days a year. (These coolers were secure from Offender tampering)
However,the Court found, that due to the helpful but limited
cooling effects of ice water, the level of heat faced by Offenders
and the pontential hazards incurred by drinking too much water,
that ice water alone could not suffice to mitigate the risk of

heat related injury.

The availability of ice water on the Jester-3 unit is sporadic
at best,because the coolers are not property secured thus allowing
Offenders to steal the ice unabated.

**FANS:**

The Court found,that each housing area on the Wallace Pack unit
contained two large fans attached to the ceiling and two large
floor fans.

These four (4) fans on each Dorm showed the Court,that T.D.C.J.
did make a genuine effort to ensure,that there were adequate fans
in the housing areas.

Dispite these efforts,the Court concluded,that the use of fans
as the primary heat mitigation measure in the housing areas were
**INADEQUATE,UNHELPFUL** and **POTENTIALLY HARMFUL.**

Plaintiffs contend,that Warden Tilley (Defendant)has not put forth
a good-faith or genuine effort to insure that there are adequate
fans in the housing areas on the Jester-3 unit.

There is no dispute,that the housing areas on the Jester-3 unit
have only **TWO (2) FANS** on each dorm and they are much smaller than
the fans that were on the Wallace Pack unit during it's ltitgation.
Clearly,in regards to fans being an efective heat mitigation, the
fans currently in use on the Jester-3 unit compared to the fans
on the Wallace Pack unit are **FEWER IN NUMBER** and **LESS EFFECTIVE.**

**COOL-DOWN SHOWERS:**

The Court found, that on the Pack unit during once a day regular
building showers,12 of the 72 shower heads were set on cold water
at all times.

In addition, twice a day all 72 shower heads were switched to cold water and all Offenders living on the dorms were given the opportunity to attend these additional cooler showers. Offenders were also allowed to request a cool-down shower at any time 24 hours a day.

Even though Offenders were afforded these showers, the Court found, that cool-down showers do afford some relief from the heat while in them,but still was not and effective mitigating measure for preventing Offenders from becoming overheated.

Plaintiffs contend,that even though cool-down showers are clearly required on the Jester-3 unit,however,Warden Tilley has refused,or failed to implement them.

Plaintiffs "EMPHATICALLY" states: "THAT AS OF JULY 14,2019 COOL-DOWN SHOWERS DO NOT EXIST ON THE JESTER-3 UNIT"!!!!!!

If this Court were to compare the Wallace Pack unit's cool-down procedures to the nonexistent cool-down showers on the Jester-3 unit,there should be no dispute,that this mitigation measure is less effective and worse than the one in place when the Court granted the injunction on the Wallace Pack unit.

RESPITE AREAS:

THERE IS NO DISPUTE, THAT BOTH PARTIES IN THE COLE VS.COLLIER LITIGATION AGREED,THAT RESPITE-THE ABILITY TO SPEND TIME IN AN AIR CONDITIONED ENVIRONMENT-CAN BE A BENEFICIAL MITIGATION MEASURE.

The Court found, that the Wallace Pack unit listed numerous respite areas that were made available to Offenders. These respite areas are as follows:

Education Department,Lower Administration,Officer's Dining Hall,
Infirmary,Laundry Captain's Office, Food Service Captain's Office,
Lieutenant's Office,Regular Visitation Room,Barber Shop, and
many others outside of the main building.

The Wallace Pack unit staff identified 20 different respite areas.

**PLEASE NOTE: THE JESTER-3 UNIT ONLY HAS TWO RESPITE AREAS** (Offender
Barber Shop,Unit Chapel).

The Court did find,that the Respite areas on the Wallace Pack unit
were a useful mitigation measure while Offender are in them.

However, the respite program inherently has many deficiencies
and even if it functions as intended ,it would be difficult if not
impossible to maintain without drastically changing the day to day
operation of a T.D.C.J. prison unit.

For example,what if all of the Kitchen workers requested respite
at the same time while at work.

Per respite rules,an Offender can request respite at any time even
if he is required to work and he can stay in respite as long as
he wish.

How could the Kitchen cook and serve meals if all of the workers
are in respite?????

This would hold true for the Laundry workers,Janitors and many
other prison workers.

The fact is, that T.D.C.J. Officials know that they can not

allow a large number of Offenders access to respite at the same
time,so they find ways  to make it difficult or unpleasant in order
to discourage Offenders from seeking respite.

Plaintiffs contend,that the respite program is broken on the
Jester-3 unit.

As stated before, there are only two (2) posted respite areas
available to Offenders.

BARBER SHOP:

The Barber Shop on the Jester-3 unit is a very small room.
It is the first place that Security Officers use as a respite
area.The barber shop contains two barber chairs one small bench
and one folding chair.Offenders are not allowed to sit in the
barber chairs unless they are being served by a barber,the bench
can hold approximately four or five people.

When the Barbers are working there are individuals waiting on
the bench to get a hair cut, meaning fewer people can be accommodated
for respite.

In fact,when the Barber Shop is full (approximately 10 people)
the cooling effect of the air conditioning is greatly reduced.
Once that the Barber Shop is full, Offenders are sent to the unit
Chapel.

UNIT CHAPEL:

The unit Chapel is a very large air conditioned building that can
accommodate several hundred Offenders at one time.
Most importantly,in the event of a power outage,the Chapel
has it's own generator.

There are several classrooms in the Chapel and two of them are
primarily used as respite areas.

These classrooms can accommodate approximately 30 Offenders per
room.

However, even on days where the heat index exceeds 107 degrees, approximately 90 percent of the Offenders on the Jester-3 unit never frequent the respite areas in the Chapel.

There are several compelling reasons why this is true.

Plaintiffs contend,that there are no posted rules in regards to respite.

This allows Security Officers assigned to the respite area in the Chapel to make thier own rules.

PLEASE NOTE:T.D.C.J. has written polices,rules and procedures in place to govern most interaction with Security Staff and Offenders.

This is done to reduce Officer discretion because discretion can lead to abuse.

Some Officers told Offenders, that they could only stay in respite for 30 minuets.

Officers told Offenders, that they were not allowed to talk.

Some Officers did not allow Offenders to bring a book or writting materials or a cup to drink out of.

Offenders were forced to sit back to back as if they were being punished.

Any Offenders who did not comply would be ordered out of respite.

In addition, the Chapel is located outside of the main building.

Offenders seeking respite can wait up to 45 minuets in a hallway without any fans in intense heat until an Officer comes from the Chapel to open the gate.

Also, Offenders seeking respire are at times subject to a more thorough personal body search than Offenders going to a religious service or other activities.

15.

The fact is, both Offenders and Security Officers are unaware of,
or confused about,the limitations and rules regarding respite.
The truth is, many Offenders are afraid to access respite for fear
of running into conflict with Security Officers.
The evidence shows, that the respite program on the Jester-3 unit
if POORLY DESIGNED,ADMINISTERED and COMMUNICATED.
Regardless,the Plaintiffs do conceed, that respite is an effective
mitigation measure because it removes them from a hot enviroment for
a period of time, and provides them an opportunity to cool down.
However, it is the times that Plaintiffs are not in respite,which
would be the majority of the hours of the day,that they are subjected
to temperatures that could cause them sickness or death.
In a crux,Plaintiffs have clearly shown,that the mitigation measures
on the Wallace Pack unit did not stop the Courts from ordering
Offenders temporary relief from the heat,and the same and in fact
worse conditions currently exist on the Jester-3 unit.
Plus, there is no dispute,,that the Jester-3 unit has done nothing
to REDUCE THE EXTREME HEAT TEMPERATURE IN THE HOUSING AREAS.
(This is the main request for relief in this cause of action)
**PLEASE NOTE:** The 5th Circuit has repeatedly reconized the serious risk of harm
that excessive heat can pose in the prison context absent adequate mitigating
measures, and have consistently found evidence sufficient to support an 8th
amendment violation,even when certain mitigating measures were available. SEE
BLACKMON vs.GARZA,484 F.App'x 866 (5th.Cir.2012),WEBB vs.LIVINGSTON,618 F.App'x
201,204 (5th.Cir.2015),VALIGURA vs.MENDOZA,265 F.App'x 232,233-34 (5th.Cir.2008),
HINOJOSA vs.LIVINGSTON,807 F.3d. 657,661,669 (5th.Cir.2015).

What is also compelling, in 2013 during the last session of the
Texas Sunset Advisory Commission,recommended,that T.D.C.J. comply
with National heating and cooling standards,maintain a temperature
in all prison units not to exceed 84 DEGREES and install heating
and AIR CONDITIONING units,as necessary,to mantain such standards.

16.

PLEASE NOTE: The Texas Sunset Advisory Commission consisted of
5 members of the **TEXAS SENATE**,and one public member appointed by the
Lieutenant Governor and 5 members of the **TEXAS HOUSE** of **REPRESENTATIVES**
 and one public member appointed by the Texas Speaker of the House.
7 members of the Commission constituted a Quorum.
All final recommendations may not be made unless approved by a
record vote of a majority of the Commission's full membership.
In addition, the Commission of Jail Standards,which consisted of
9 members appointed by the Governor with advice and consent from
the Texas State Senate, two being County Sheriffs,one County Judge,
one Practitioner of Medicine,one County Commissioner,and 4 members
of the general public.
They concluded,that all City,County,and State jails must be air
conditioned. (There is a temperature ceiling of (65-85 DEGREES).
Even T.D.C.J. has a standing policy that requries Offenders with
a spinal cord injury at T-6 or above will be housed in a temperature
controlled (66-86 degrees)environment and must be transported in
an air conditioned vehicle during elevated environmental temperatures.
SEE CORRECTION MANAGED HEALTH CARE POLICY MANUAL # G-51-3 PAGE 2.
Planitiffs contend, that it DEFIES MEDICAL LOGIC for T.D.C.J.
Officials to set a benchmark temperature ceiling for one type of
heat sensitive Offender and BLATANTLY DISREGARD all other Offenders.
After all, there is NO DISPUTE that several Offenders have suffered
heat related injurys and death who were not diagnosed with a T-6
or above spinal cord injury in T.D.C.J..
PLEASE NOTE:THIS BENCHMARK TEMPERATURE CEILING (66-86 degrees)IS BEING
INFORCED DISPITE THE EFFECTIVENESS OF ANY OTHER HEAT REMEDIAL MEASURE
PROVIDED BY T.D.C.J.!!!!!!!!!!!!!!!!!!

In the COLE vs.COLLIER litigation, The Court heard testimony from several EXPERTS about the effects of heat on the human body. Due to the well-studied area of health science and medicine,there is little disagreement among the experts about the effects of heat on the human body.

Exposure to heat places pressure on the human body.

In responce,the body uses two primary mechanisms to cool itself. Evaporative cooling also known as perspiration/sweating and cutaneous vasodilation(dilation of blood vessels close to the skin.) These processes and intricately interconnected and are managed by the section of the brain called the hypothalamus.

These methods to cool the body are referred to as thermoregulation. The Experts concluded, that Offenders with the following serious diagnosed medical conditions are at a HIGER RISK for heat related injury and death, as these conditions impede thermoregulatory functioning: DIABETES,CARDIOVASCULAR DISEASE,PULMONARY DISEASE, SWEAT GLAND DYSFUNCTION,CIRRHOSIS OF THE LIVER,CYSTIC FIBROSIS, THYROID DYSFUNCTION,OBESITY,PSYCHIATRIC,HYPERTENSION,CONGESTIVE HEART FAILURE,SJOGREN'S SYDROME,SEVER ASTHMA,and OFFENDERS OVER 65 YEARS OLD.

In addition to these underlying conditions that can exacerbate the effect of heat on the body,certain medications can also impede the body's ability to thermoregulate.

These medications are as follows:

ANTICONVULSANTS,ANTICHOLINERGICS AND ANTIHISTIMINES,ANTIPSYCHOTICS, ANTIDEPRESSANTS,ANTIMANICS,BETA BLOCKERS AND CALCIUM CHANNEL BLOCKERS AND DIURETICS.

For T.D.C.J. Officials to automatically implement a policy to
set a **MAXIMUM HEAT INDEX CEILING** in order to protect only one type
of heat sensitive Offender and turning a blind eye to all others,
is clearly an act of "DELIBERATE INDIFFERENCE", because they knew
or should have known,that Offenders with diagnosed heat sensitive
medical conditions other than a T-6 spinal cord injury,..can suffer
heat related injury,ie: HEAT STRESS,HEAT CRAMPS,HEAT EXHAUSTION,
HEAT **STROKES** and DEATH while in their housing areas.
SEE WEBB vs. LIVINGSTON, 618,F App'x 201,204,(5th.Cir.2015),
JONES **vs.**LIVINGSTON,4:-cv-02335, McCOLLUM **vs.**LIVINGSTON, 3:12-c-**v**-2037.
**T.D.C.J.** ADMINISTRATIVE 10.64,T.D.C.J. INCIDENT MANAGEMENT **PLAN,**
T.D.C.J. RISK MANAGEMENT PROGRAM MANUAL,T.D.C.J. CORRECTIONAL
MANAGED HEALTH CARE MANUAL D-27.2,T.D.C.J ANNUAL HEAT MESSAGE,
NATIONAL WEATHER SERVICE GUIDELINES,HEALTH SUMMARY FOR **CLASSIFICATIONS**
HSM-18,YEARS OF EXPERIENCE WORKING **IN** T.D.C.J.,AND PLAIN COMMON
SENSE.

In addition,not only do their policies reflect the known danger of
the heat on Offenders who have not been diagnosed with a spinal
cord injury,T.D.C.J. Officials are well aware of their own Officers
suffering from heat related illnesses.
There should be no dispute,that the inference could be drawn,that a
substantial risk of serious harm exist for Offenders who have
not been diagnosed with a spinal cord injury of T-6 or above
and these T.D.C.J Officials know it.
And, they have done nothing to reduce the extreme temperatures in
the housing areas at the Jester-3 unit.

Clearly, Plaintiffs have shown both a scientific and statistical
facts,to prove the seriousness of the pontential harm and likelihood,
that such conditions of extreme heat will actually cause injury.
And, this Court can easily determine,what Texas Society considers,
as being contemopary standards of decency and need to look no
further than,the recommendations for a **MAXIUM HEAT INDEX CEILING**
set by the TEXAS SUNSET COMMISSION,that set a ceiling for all T.D.C.J
prison units at 84 degrees,TEXAS STATE STATE LAW,that set a heat
ceiling for all City,County and State jails at 85 degrees,a TEXAS
FEDERAL COURT in **COLE vs. COLLIER** at 88 degrees,and T.D.C.J.
POLICY, which set a temperature heat ceiling for some heat sensitive
Offenders at 86 degrees.
Plaintiffs contend,that they and HUNDREDS of other Offenders
currently housed on the Jester-3 unit,have been diagnosed with
one or more of the heat sensitive medical conditions and have been
prescribed heat sensitive medications listed within this cause
of action.Plaintiffs contend,that they and many other Offenders
have suffered heat related injury,and may have been a contributing
factor for the recent death of Offender **WILLIE HARDEMAN T.D.C.J.**
**NUMBER 1891985.** (HIS DEATH PROMPTED THIS LAWSUIT)
On information and belief,several days prior to his death and
on the day of his death,he had complained about the extreme heat
he was being exposed to and having a difficult time breathing.
Offender Hardeman passed away on 7-13-2019 of an apparent heart attack.

CAUSATION

PRELIMINARY INJUNCTION REQUEST


RAYMOND L.CAVITT #1897462:

Is a 65 year old,wheelchair restricted Offender and currently

housed in one of the 14 dorms that are not air conditioned on

the Jester-3 unit.

Offender Cavitt, is a "POSTER-BOY" for the need of emergency

injunctive relief from the extreme heat conditions that now exist

in his living area (Dorm).

Offender Cavitt has been diagnosed with the following heat sensitive

serious chronic medical conditions: CHRONIC OBSTRUCTIVE PULMONARY

DISEASE (COPD),CORONARY ARTERY DISEASE (CAD),OBSTRUCTIVE SLEEP

APNEA (OSA),ASTHMA,DIABETES TYPE-1,HYPERTENSION,EMPHYSEMA and

has suffered a STROKE,TWO HEART ATTACKS and has (6) STENTS.

Mr.Cavitt is also dependent on the use of a CPAP MACHINE and

(3) INHALERS (Proventil HFA,SPIRIVA,Flovent).

In addition to these (3) inhalers,Mr.Cavitt has been prescribed

the following medications and some of them are lisied in T.D.C.J.'s

Health Care Manual as drugs associated with heat stress: METOPROLOL,

ISOSORBIDE,NITROGLYCERIN,AMLODIPINE,ATORVASTATIN,CLOPIDOGREL,

DULOXETINE,HYDRALAZINE,LEVOTHYROXINE,LISINOPRIL,LORATADINE,

DOCUSATE SODIUM,FERROUS SULFATE,FUROSEMIDE,NOVOLIN,OMEPRAZOLE

As a result of these medical conditions and medications, Mr.Cavitt

has been instructed by Medical Personnel, to avoid DIRECT SUNLIGHT,

TEMPERATURE EXTREMES, and HIGH HUMIDITY EXTREMES.

Mr.Cavitt,on numerious occasions complained to Jester-3 Medical
Personnel about the heat related problems he has experienced in
his living area,chow hall and pill window.

When its hot,Mr.Cavitt several times a day,has experienced DIFFICULTY
BREATHING,SEVERE HEADACHES,NAUAEA,DIZZINESS, and PROFUSE SWEATING.
Per Mr.Cavitt,"Being in the heat just drains me,I feel weak all of
the time,I can't eat or sleep,I get confused,can't read or write".
However,Mr.Cavitt does conceed,that the times that he is allowed
to spend in respite helps alot.

He stated that he wished that he could sleep in respite (Mr.Cavitt
tried to sleep in respite while sitting in his wheelchair and was
told that it was not allowed) because his most difficult times
are when he is trying to sleep.

PLEASE NOTE:Even late at night the temperature on Mr.Cavitt's
living area exceeds 90 degrees.

When he puts on his CPAP mask,the machine blows out nothing but
hot air and the mask around his face makes him sweat even more.
While  sleep,he sweats so much that the mask slips off of his
face.

Many nights he just sits up in his chair because he can breath
if he is laying in his bed.

In addition,the mental anguish of knowing that he has to wake up
each day to deal and suffer with the extreme heat conditions that
now exist on the Jester-3 unit has taken its toll.

Mr.Cavitt contends,that the Jester-3 unit Warden Cynthia Tilley,
is well aware that this unit's Classification Department has a long
history of classifying disabled Offenders to facilities that are
ill-equipped to handle their needs.

22.

JIMMY BLACK T.D.C.J. #1617017:

Is a 52 year old Offender currently housed on 7 dorm which is
one of the 14 dorms that do not have air conditioning.
Mr.Black has been diagnosed with the following life-threatening
HEAT SENSITIVE medical conditions: ATHEROSCLEROTIC HEART DISEASE
(CAD),CHRONIC OBSTRUCTIVE PULMONARY DISEASE (COPD),HYPERTENSION,
EMPHYSEMA,HISTORY OF TAI and CEREBRAL INFRACTION,HYPOTHYROIDISM.
Mr.Black has a PACEMAKER and DEFIBULATOR, he has suffered 3 HEART
ATTACKS and 2 STROKES,he also has 12 STENTS!!!!!!!
AS RESENT AS 7-19-2019,MR.BLACK PASSED OUT IN THE CHOWHALL DUE
TO BEING OVERHEATED and DEHYDRATED.
Mr.Black has been prescribed the following medications and some
of them are known by T.D.C.J. Officials as being heat sensitive.
In addition to the daily use of THREE INHALERS (Proventil,Spiriva,
Flovent),ISOSORBIDE,CLOPIDOGREL,DIPHENHYDRAMINE,FLUCONAZOLE,
FLUOXETINE,RANOLAZINE,ATORVASTATIN,CARVEDILOL,LEVOTHYROXINE,
LISINOPRIL,LORATADINE,have been prescribed to him.
As a result of the heat sensitive medical conditions and medications
Mr.Black has been instructed by his Medical Provider to avoid
TEMPERATURE EXTREMES.
Mr.Black has begged and pleaded with his Medical Providers to
Please put him in and air conditioned dorm,he was told,decisions are
made in Huntsville based on a HEAT SENSITIVITY SCORE.
Mr.Black suffers the classic symptoms of heat related injury.
Most importantly he stated, "The heat is causing me to be sick
to my stomach and I get dizzy to where I have to get cool or
I will pass-out."

"I have to place cold rags on my neck and face,when placed in the
heat,I see spots,I have a difficult time sleeping,I need to put
wet rags on my face and stomach and neck just to sleep."

Mr.Black has suffered a heat related injury on 7-19-2019 and
the other Plaintiffs have shown a substantial threat,that they will
also suffer irreparable injury if forced to be housed in these
extreme heat conditions every summer.

All Plaintiffs contend,that they have complained to T.D.C.J
Officials and their Medical Providers in regards to being exposed
to extreme heat conditions in their living areas and these Officials
have done nothing to reduce the temperatures on these Dorms.

Plaintiffs contend,that this complaint is not some self-fullfilling
portents of doom nor is it speculative or conjectural.

There are many other Offenders assigned to the Jester-3 unit who
have medical conditions and take the same medications that
Plaintiffs do.

They all suffer some aspects of heat stress and some are incapable
unwilling or  afraid to comfront T.D.C.J. officials about the
extreme heat conditions that they are being exposed to.

HARRY F.KERLEY #895775:

Is a 55 year old Offender currently housed on 2-Dorm which is
one of 14 dorms that do not have air conditioning.
Offender Kerley has been diagnosed with following heat sensitive
serious chronic medical conditions:OBESITY (BMI37),ASTHMA,CORONARY
ARTERY DISEASE (CAD),CONGESTIVE HEART FAILURE,HYPERTENSION,DIABETES,
CHRONIC KIDNEY DISEASE in addition to TRIPLE BY-PASS SURGERY.
In addition to being prescribed an inhaler (PROVENTIL),Mr.Kerley
has been prescribed the following medications and some are listed
as being heat sensitive according to T.D.C.J.:HYDROCHLOROTHIAZIDE,
METOPROLOL,AMLODIPINE,ATORVASTAIN,NOVOLIN,HYDRALAZINE,LISINOPRIL,
METFORMIN,
As a result of these medical conditions and medications,Mr.Kerley's
Medical Providers instructed him to avoid EXTREME TEMPERATURES,
and HUMIDITY EXTREMES.

Mr.Kerley suffers from all of the classic symtoms of heat related
injury. He stated "I become dizzy,head aches,lack of energy,nauseous,
and constant sweating".
"I also have shortness of breath as well as dry moutn because of
being dehydrated from being over heated".
"I have a hard time sleeping in the heat","I just sit up and sweat".
He also stated that it is too difficult to go to respite.
Because Officers are not trained on the importants of allowing
Offenders access to respite and they always give you a hard time.
Mr.Kerley stated "I hope that I don't die like Willie did".
Clearly Mr.Kerley is being housed in OVERWHELMING INADEQUATE
living conditions.

JUSTIN D.BUXTON T.D.C.J. #2027038:

Offender Buxton is currently housed on 12 Dorm which is not air conditioned.

Mr.Buxton has been daignosed with the following heat sensitive medical conditions: DIEBETES TYPE-1,HYPERTENSION.

Mr.Buxton also has an ENLARGED HEART(a result of uncontrolled hypertension) 3mm. MODULAR LEFT LUNG and a recent TRIPLE BY-PASS PATIENT (date of operation 2-26-2019), he also uses a WALKER.

Mr.Buxton has been prescribed the following heat sensitive medications: METOPROLOL,HYDROCHLORTHIAZIDE,TEGRETOL,LISINOPRIL.

Mr.Buxton suffers all of the classic examples of heat related illness:EXTREME DIFFICULTY BREATHING,LIGHT HEADINESS,DIZZINESS, EXTREME LACK of ENERGY,LOSS of APPETITE,

Per Mr.Buxton,"I can't sleep right at night,I often wake up gasping for air,this scares me so badly it's hours before I can go back to sleep".

"As a result,I am always tired and feel drugged out".

Mr.Buxton's Medical Providers have also instructed him to stay out of DIRECT SUNLIGHT and NO TEMPERATURE EXTREMES.

PLEASE NOTE: T.D.C.J. TOP PHYSICIANS HAVE NOTED THAT INDOOR APPARENT TEMPERATURES CAN ACTUALLY BE DRAMATICALLY HIGHER THAN THE TEMPERATURE OUTSIDE.

In fact,the temperature outside can be 98 degrees, and the inside temperature could be up to 110 degrees.

KENNETH TAYLOR #828757:

Is a 52 year old Offender under the Psychiatric care of U.T.M.B.
Mental Health Providers.

Mr.Taylor has been diagnosed with ASTHMA,HYPERTENSION,HYPOTHYROIDISM,
and a history of TIA,and CEREBRAL INFARCTIONS (Repeat STROKE VICTIM).
he also has STENTS due to CALOTID ATRERY DISEASE and SEIZURES.
Mr.Taylor has also been precribed the following medicatios which
some can make it difficult for his body to THERMOREGULATE:
LEVOTHYROXINE,MECLIZINE,METOPROLOL,OMEPRAZOLE,TERAZOSIN,AMLODIPINE,
CARBAMAZEPINE,CLOPIDOGREL,DULOXETINE,LEVETIRACETAM,ATORVASTATIN.
As a result of the medical conditions and medications,his Medical
Providers ordered him to avoid DIRECT SUNLIGHT,NO TEMPERATURE
EXTREMES,NO HUMIDITY EXTREMES.
Mr.Taylor, stated that he suffers from all of the classic heat
symptoms: DIZZINESS,VERTIGO,LOSS OF BODY CONTROL,HARD TIME BREATHING,
can't SLEEP.
Mr.Taylor fears,that"when be becomes over heated, the blood flow
to his brain is reduced and at times he feels that he is about to
have a stroke, and some day it might cause a real stroke".
"This is why at this time I ask this Court and honorable Judge give
me immediate relief"
"Because of the life endangering effect of the heat on my illness".
Mr.Taylor brings this suit due to Prison Officials who perpetuated
conditions and practices that they knew or should have known, were
DELETERIOUS to the physical and mental well-being of Mr.Taylor.

## CONCLUSION

The failure of T.D.C.J. Officials to take **proper** cognizance
of the serious diagnosed medical conditions of the Plaintiffs,
and to anticipate and guard against known unsafe prison conditions,
clearly shows a conscious indifference or reckless disregard for
the health and safety of the Plaintiffs.

T.D.C.J. Officials are well aware of the pervasive,longstanding,
and well documented extreme heat conditions that the Plaintiffs are
being subjected to on the Jester-3 unit.

Plaintiffs agree, that Courts usually arrive at a decision as to
the effects of conditions on the General prison population rather
than a specific type of individual.

However, conditions that are constitutionally sufficient for one
type of class of Offender,are not necessarily constitutionally
sufficient for another.

An Offender with specialized or complexes needs, may be subject to
cruel and unsusual punishment by being forced to live under conditions
that are adequate for the general population Offender.

For example,it has been held, that contemporary standards of decency
contemplate, that special concerns should be given to the needs
of physically and mentally handicapped Offenders so they are
not required to rigidly fit into a mold for Offenders of average
physical mobility and or intelligence.**SEE RUIZ vs. ESTELLE** 503
**F.SUPP. 1265,1345-1346 (1980).**(A T.D.C.J. CASE)

In this cause of action,Plaintiffs wish to settle a question
of law once and for all.

In order to remedy an 8th.Amendment violation in regards
to extreme heat conditions in living areas on the Jester-3,
CAN THIS COURT DETERMINE WHAT TEMPERATURE TRIGGERS 8th.AMENDMENT
PROTECTION?

We are asking this Court to set a MAXIMUM HEAT INDEX of 88 degrees
in all living areas where heat sensitive Offenders are housed on
the Jestre-3 unit.

Because,there are no current remedial measures in place to reduce
the temperatures in these living areas.

Plaintiffs pray for a PRELIMINARY INJUNCTION because,there is a
substantial likeihood,that they will prevail on the merits;that
there is a substantial threat,that Plaintiffs will be or have
been harmed,and may suffer irreparable injury;and the threatened
injury to Plaintiffs outweighs the threatened harm that an
injunction may cause the Defendants;and granting this preliminary
injunction will not disserve the public interest.


RESPECTFULLY SUBMITTED

RAYMOND CAVITT        JIMMY BLACK        JUSTIN BUXTON        HARRY KERLEY

KENNETH TAYLOR


SUBMITTED BY

MR.KEITH M.COLE #728748
(JAILHOUSE LAWYER)
JESTER III UNIT
3-JESTER ROAD
RICHMOND,TEXAS 77406-8544


29.

United States Courts
Southern District of Texas
FILED

AUG 01 2019

David J. Bradley, Clerk of Court

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

RAYMOND L.CAVITT
 et.al.Plaintiffs,

VS.

LORIE DAVIS
 et.al. Defendants.


### PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL
### PETITION FOR CERTIFICATION OF A SUB-CLASS INCORPORATED


TO THE HONORABLE JUDGE OF SAID COURT:

 Now comes Raymond L.Cavitt et.al.(PLAINTIFF$) to file this

document PRO SE in the above styled civil action.

Plaintiff's pray,that this HONORABLE Court will GRANT this

MOTION TO APPOINT COUNSEL and CLASS ACTION STATUS.

Plaintiffs will show the following:

Unlike criminal cases,where every person has a Constitional right
to be defended by a Lawyer,Plaintiffs conceed,that they do not
have a wholesale Constitional right to be represented by a Lawyer
in this cause of action.

"HOWEVER",the U.S.Constitution gives Courts the "AUTHORITY" to
appoint Counsel in certain circumstances.SEE U.S.C. § 1915 (e),(1).
[n]othing in [the] clear laungage [of § 1915 (e),(1)] suggest
that appointment of Counsel is permissible only in SOME LIMITED
set of circumstances.

Nor has it been found in the Legislative history of this provision
to support such a limitation.SEE PARHAM VS. JOHNSON,126 Fed.,454,
457-58 (1977),and TABRON, 6 F3d.,157.

However,there are delineating factors,that Courts consider in
appointing Counsel:

1.Does Plaintiff's case have MERIT?

2.Can Plaintiffs EFFECTIVELY PRESENT and MANAGE this case while
being imprisoned?

3.Will FACTUAL INVESTIGATION be necessary and do Plaintiffs have
the ability to pursue such investigations?

4.Will this cause of action require the testimony of EXPERT
WITNESSES and do the Plaintiffs have the ability and resources
to acquire them?

5.Will a trial in this case turn on the CREDIBILITY of WITNESSES
to the point,that there is a need for a TRAINED LITIGATOR to
propare for and conduct CROSS-EXAMINATIONS?

6.MOST IMPORTANTLY,CAN A PRO SE OFFENDER EFFECTIVELY,FAIRLY,

ADEQUATELY or LEGALLY represent a Sub-Class of Offenders in a

civil action?

Plaintiffs contend, that they have demonstrated the existence

of "QUESTIONS of LAW and FACTS"common to a Sub-Class of Offenders

on the Jester-3 unit,and have satified the requirements of (23) **(a),**

**(2).**

1.That excessive heat constitutes a condition of confinement,that

poses a substantial risk of serious harm to the health of all

Offenders housed on the Jester-3 unit,who have been diagnosed with a

heat  sensitive medical condition or prescribed a heat sensitive

medication.

2. That T.D.C.J. Officials have been deliberate indifference to the

risk posed to these heat sensitive Offenders.

In addition,The 5th.Circuit concluded that the District Court

did not abuse its discretion in certifying Class Action status

to a sub-class of Offenders in COLE VS.COLLIER.

Plaintiffs also contend,that not only will appointment of Counsel

enable this Court to protect others , to appoint a  Counsel may

serve the Court as well,and also serve the best interest of the

opposing parties.

CASE IN POINT:When Lawyers are called on to deal with other

Lawyers, these fellow Attornys are accustomed to the **PROCEDURES,**

**LANGUAGE,**and **CONCEPTS** of the law.

This would obviously move the legal process in a more **TIMELY** and

**ORDERLY** fashion.

3.

Plaintiffs do conceed,that their JAILHOUSE LAWYER does possess a
good basic knowledge knowledge of procedual law.

However,that limited knowledge does not establish,that Plaintiffs
are able to present and defend their case in a Court of law.

This Court is well aware,that trials are hard to do.

They require a soild understanding of substabtive law,procedual law,
and the rules of evidence;the ability to recall and apply legal
knowledge on SPLIT SECOND'S NOTICE;excellent communication skills;
the confidence to address and persuade a Judge and above all else,

  PREPARATION.

Plaintiffs have no idea how to repersent a class of Offenders or
prepair for a trial.

Even though Plaintiffs may have done an adequate job of presenting
this case on paper,this is all meaningless unless they know how
to present this case at trial.

THIS IS NOT A LAWSUIT ABOUT MONEY NOR IS IT ABOUT COMFORT.
HUMAN BEINGS ARE SUFFERING AND DYING DUE TO THE EXTREME HEAT
CONDITIONS IN TEXAS PRISONS. PLEASE SEE ATTACHED EXHIBITS
When powerless people confront a mammoth legal system such as the
Attorney General of the Great State of Texas without the necessary
tools to protect their interest,THEY USUALLY FAIL TO OBTAIN RELIEF.

In conclusion,Plaintiffs respectfully request,that this Court
become a QUASIADVOCATE and view Plaintiff's complaint from the
inside of prison looking out, and in the interest of justice and
fairplay,GRANT appointment of Counsel and Class action status.

4.

EXHIBITS —A
STATEMENTS OF SUB—CLASS MEMBERS

## DECLARATION

I, Christopher Garrett, being over the age of 18 years and competent to testify to the following which I have personal knowledge of, do declare:

I've been in TDCJ of 23 years. Summer heat makes us miserable and can be deadly. Not only death from the extreme temperatures, but also because of the heat related violence.

My fan feels like a hairdryer blowing on me, & I sleep in a pool of sweat, whenever I am finally able to get any sleep at all.

The respite area is difficult to access, and we face retaliation by using it. Security has imposed harsh & unrealistic rules for access. They have not once called for "cool-down" showers, although the shower room is often staffed.

I have high blood pressure, I'm obese, I have hyperhydrosis, I'm on water pills, & I have heat related seizures. I also get a rash when the heat comes - the medical department calls it "prickly-heat," which leaves us susceptible to secondary infection. The heat also makes me dizzy & it is hard to get around because of this.

The chow hall & the showers are the hottest, so I sometimes must forego a meal when it is hottest - leaving me to dine on ramen noodles or some other nutritionally poor commissary item.

I, Christopher Garrett, do hereby declare under penalty of perjury that the foregoing is true & correct.

Executed on this 30th day of July, 2019.

Christopher Garrett #786065
Jester III Unit
3 Jester Rd.
Richmond, TX 77406

Robert Brown III  TDCJ #1398898
DATE                    TITLE                    PAGE #

On 6-9-19 I was told by
CO I Edegu that I could only
stay in Respite for 30 mins &
that I would have to leave,
I quoted him the policy; he
Stated that Warden Jolley gave
him the Directive, I then later
that evening had one of my
Heart episodes because of the
Heat. I was taken to medical
On 6-18-19 I was told by CO I
Onawusi that per Chap Mitchell
that since I've been in Respite
for 30 mins that I had to leave
Then once again I had another Heart
Episode because of the Heat, My Heart
Rate was approx 160 bpm & I was
in medical for 6 hrs. I have
Super Ventricular Tachycardic
& the heat exaserbates my Condition
My dad Robert Brown Jr called
the Dir Reg. Dir. on 6-21-19; also
asst warden Demyers called my
dad regarding being kicked out

"How will I be different today because of what I have just read?"

| DATE | TITLE | PAGE # |
|------|-------|--------|

or Respite. Then Capt Orphey called me out & had me write a statement regarding the situation. Then starting on 7-18-19 C/O Bracey said there is a new policy that we can't talk in Respite & I told him per the Cole lawsuit & Supreme Court Cases & Our 1st Amend Rights he couldn't give us a valid order to not talk. Then on 7-18-19 Warden Jolley had Chap. Lunetta Mitchell type up on regular TDCJ letter head that we can't talk in the Chapel Respite, One book & One cup. Then on 7-21-19 Sr Warden Tilley came to Respite in the Chapel & told us that we can't talk. I asked her where is it in the TDCJ handbook that we can't talk. She then stated "Homeboy you need to be quiot or I will have one of my officers write you a case & have you removed. Then she stated that she just had a conf. call with CID Dir. Torrie Davis & she made the rule. However there is no rules set in place for the barber shop respite.

"How will I be different today because of what I have just read?"

LIFE JOURNAL

Dorm 14-15

Ive had eight heart attacks and a stroke tripel bypass have diebetes a pace maker then two Back surgerys had a pubic Mass removed. the heat drains me makes me just lay in the bed zapped for energy, Miserable with headaches and cant sleep My Right foot has a hole in it and the heat cant be helping it

Steven Crush 1964199

ne Brown CID#02N6241

Jester 3 Unit
3 Jester Rd
Richmond, TX 77406

Dear Judge, I have been diagnosed with a tramatic brain injury and due to that, I cant be housed in any type of area that exceeds 80 degrees in temperature.

Whenever I get too hot I start to black out and loose conciousness. Last year at this unit I went from my wheelchair to the toilet and fainted.

I also have heat restrictions due because I have siezures when it gets too hot so therefore im not supposed to be in heat period.

This unit isn't fully equipt with A/C like it should be because it is a medical unit and a lot of other inmates are suffering severity because of the heat do to their own type of medical reasons.

So whoever is reading this and acknowledging what is going on at this unit and can help in any type of way. I truthfully say thank you to you because you are going to help save lives.

Joe Feijoo, #68329
Jester III Unit
3 Jester Rd.
Richmond, TX 77406
July 25, 2019

Dear Judge:

I Am A cancer patiant goins threw chemotherapy. This heat is literally killing me

Thank you for your time e concern in this matter. Have A nice day

Joe Feijoo

# Affidavit

I, Patrick Smith, TDCJ-ID NO. 896428 whom is over the age of 18 years old and have sound mind to make the following statement to the best of my knowledge.

I'm incarcerated here at the Jester 3 unit in Richmond, Texas within the county of Fortbend, texas through the agency of TDCJ. The heat and sun ray's do causes me to get dizzy and bring more harm to my eye. I'm diagnosed from having nerves pain in my hands, neck and back area's as well my lymphedema pain. The dorm for wheel chair offenders like me are being attack from its extremely heat and I do have heat related restrictions but the security administration officials said those restrictions are for work duties not living conditions. I have been diagnosed as being legal blind which I use a magnifier to write and read daily.

I swear the above statement is hereby true and correct best to my knowledge which was executed on this 30th day of July, 2019

Sincerely, Patrick Smith #
# 896428 Jester 3 unit

To Whom it concerns,                    July 29, 2019

This is in concerns about my health
in the heat I'm 52 Have Hep C the
heat makes me weak and dizzy
I'm also a amputee and all the
heat is causing my leg to get
soars and heat Rash extremely
Bad. I also had asma as a child
and at times I cant breath. cause
of it. I do have Heat restrictions
"Medical" I was in a A/C dorm
But I was removed. This letter
is all is I need A/C for my
well being of my health and to
not die from ~~fate~~ over heated

                    Sincerly
                    Charles Kelly Nash
                    # 1276059
                    # 3 Jester Rd
                    Richmond. TX 77406

                    July 29, 2019

# Affidavit

I, Patrick Smith, TDCJ-ID NO. 896428, am the applicant and over the age of 18 years old whom does have a sound mind and do sweal every things is correct to the best to my knowledges.

I am an witness to the last 24 hours and the last 7 days to offender - willie J. Hardeman TDCJ-ID No. 1891985 here at the Jester 3 unit in the 14 dorm that is designated for mostly wheel chairs bond offenders, death----

On July 12, 2019 willie J. Hardeman had fell on the floor and hit his head. Which security did came into 14 dorm and ~~was~~ taken to the 24 hours open daily infirmary. By the time Sgt. Oluseyi Yerokun and Sgt (first name?) williams arrived there the first thing they said to willie was why are you on the floor you know nothing is wrong with you. But willie constantly that he can't breathe - and he is having chest pain. Now remember medical officials such as the nurses always go with security what they speak of about us offenders at their assessments. But they done a EKG than told security that nothing is wrong with him. But all through the night willie breathing gotten alot worsen at this point he could not roll him self on his wheel chair. Now it is 7-13-19. officer (first name?) salau always speaking her native language to other native Nigerian nurses and officers that us English speaking only Americans had been wrote against it, understand at all. Grievances always say they can - ?! but those grievances

(1 of 3)

But Ms. Rose Opara, RN the charging nurse did place willie on the medical gurner. willie did starting telling the nurses that he can't breathe. Ms. Opara, RN than told willie if he can't breathe well than he need to sit up and catch his breath if he is having a hard time breathing. shortly after that the nurses transfer willie to his own wheel chair but willie keep on telling Ms. Opara, RN that he can't breathe. thereafter Ms. Opara, RN told willie to drink to cups of water which she said the on-call provider order this treatment. About 5 minutes later (give or take) willie than urination and ~~struck~~ defecating on him self shorty after that that when he ~~struck~~ died. That when Ms. Bright Etuk, LVN told Ms. Opara, RN that willie starting to smell real bad and other offenders starting to yell at them willie urined and defecated on him self. Now these nurses ~~are~~ starting to speaks in their native language amongst their selves ~~to~~ and to officer salua. Early these nurses and officer salua was laughing and joking about his medical conditions. Now Ms. Ejeoma Nwizu, RN did told the medical department offender worker to go to get an oxygen tank but there was already an oxygen tank in the emergence room (ER). Than Ms. Opara, RN placed the oxygen on mask on willie face than closed the curtains shut. They already knew willie was dead. By placing the oxygen mask on him they trying to manipulated his body symptons thinking he will have oxygen in his body by the time when the paramedics will arrived. So they can

(2 of 3)

I'm a Disabled Vet 75-79
my The Damage Done AS Follows

1. Hurt Both Knees SOFT tissue Damage an ATEMP To Fix, I didn't work Im To wEre Knee Braces

2. Shattered LEFT Hip 78 repelling off Hela Chopter. LEFT Hip replaced 97. Back injures C3 to S1, To Back Surges 78. Both FAiLed. Back PAin gets worse with Age 62 years old Right Know I'm concidered 100% Disable throu From frome The Dis'AbLed Veterans Adm. & ALL so w In SSDI

Some Head & Neck injure Elbows, Both Re-wrist ALL N.ALL 9 Surges From 1975 to Present I Forgot I'm Stage 3 Cansen I Should of started with That. I know I'm not at the country Clubs but the A.C. issue is a medical ItAllways Told with your injures, Age, disability's and Cansen I should be at the a.c. dorm

Ricardo Sosa
02242925

documented that willie died on the way and/or en route to the local hospital and not in their custody. Now the Jester 3 unit medical Department on July 15, 2019 had a meeting and was told if any body to ask what did happen to willie that he died from a massive heart attack.

Before the last 24 hours to willie death he was sleeping naked due to the heat and he was partial paralyzed due from having a stroke and he taken medications for his hip-c dragnosis. And willie constantly urined and feces on his self all the time.

I swear the above statement is true and correct because I either was there or heard every words of it from these nurses and officers, is to the best to my knowledge. Executed on this 30th day of July, 2019

Sincerely, Patrick Smith

Patrick Smith
TDCJ-ID No. 896428
Jester 3 Unit
3 Jester Road
Richmond, Texas
77406

(3 of 3)

July 30, 2019

Kevin D. Class - # 2127182
3 Jester Rd.
Richmond, Tx. 77406

Dear Judge

    I, Kevin D. Class am currently incarcerated at the Jester III unit. As you know, this unit is not equipped with air conditioning, in all of the dorms or wings. I was assigned to this unit to be in a climate controlled environment because my disabilities affect my body temperature, due to all of the inflammatories that my injuries are causing. I was not here but 9 days & the officers moved me to a hot dorm. I am still in a hot dorm for almost 2 years & I should not be in. On my health summary, it states that I am not to be exposed to extreme humidity and extreme temperatures. I am constantly having spasms, heat headaches, breathing issues & I'm not getting proper rest at night or during the day time. Life was so much better & comfortable, when I was in my climate controlled environmet. Please Help

Sincerely, Kevin D. Class

Terry P. Hargiss
Jester III. Unit
3- Jester Rd.
Richmond Tx. 77406

Dear, Judge

I Terry P. Hargiss am Currently incarcerated at the Jester III. Unit. As you know this Unit is not equipped with air conditioning, in all of the Dorms or Wings. I was assigned to this Unit to be in a climate controlled enviroment because my disabilities affect my body temperature, due to all of the inflammatories that my injuries are causing. I was not here but 3 days, and the Officers moved me to a hot Dorm. I am still in one for almost 2 years and I should not be in one.

On my Health Summary, it states I am not to be exposed to extreme Humidity and extreme temperatures I am constantly having spasms, heat head aches, heathing issues and I am not getting proper rest at night or during the day time. Life was so much better and comfortable when I was in my climate-controlled environment. Please Help!

Thank You!

File: Copy

7/29/2019 @ 12:33pm JESTER III UNIT
BY ANY MEANS AND WILL...
CHARLES EDWARD ENGLISH, OFFENDER
2209864 TDCJ #

ON OR ABOUT, AUGUST 09, 2018; I
WAS TRANSPORTED TO TDCJ GARZA
WEST WHO DETERMINED I NEEDED
TO BE CLOSER TO MEDICAL FOR
CHRONIC CARE DUE TO DIABETES AN-
XIETY CHRONIC PAIN AND PTSD
WHICH BROUGHT ON AND ONSLOUGHT
OF INFLAMATIONS IN MOBILITY
AND RESPERTORY CONDITIONS DUE TO
INVIRONMENTAL CONCERNS. TOO AS AN
HONORABLY DISCHARGED VETERAN
MY CONDITIONS WERE DIAGNOSED
AND DOCUMENTED PRIOR TO TDCJ
JESTER III UNIT HOUSING SINCE
SEPTEMBER/2018.. SEEKING RELIEF...

SINCE BEING HOUSED AT JESTER III
UNIT I'D SOUGHT AND APPLIED FOR
AN INDIGENT FAN FOR EXTREME
RELIEF FROM THE HEAT CONDITIONS
TO NO AVAIL... THEREFORE I'VE
HAD 3 SEPERATE HEAT RELATED
ILLNESSES AKA HEAT STROKES IN
2019... SOUGHT TREATMENTS FROM
UTMB FOR EACH OF THEM...

concerning excessive heat conditions

I marcos Gutierrez #715981 do declare
that it's extremely Hot at the Jester 3 unit.
I suffer from neck problems cervical
spondylosis and myelopathy (spinal cord disease)

Marcos Gutierrez

MARCOS GuTiERREZ
#715981

My Name is Dennis Allen McNutt, TDCJ-CID#2230264.
I am 61 years old and I have the following heat-related restrictions #19a Medical-No Work in Direct Sunlight, #20a Medical-No Temperature Extremes, #21a Medical-No Humidity Extremes, #22 No Exposure to Environmental Pollutants and #23 No Work With Chemicals or Irritants.

I've been dianosed with COPD and I have Problems with breathing as well as with the heat that is unbearable on this facility.

I've been on the Jester III Unit since January 09, 2019. The heat during the summer months drains me of all my energy. I get dizzy and can't think straight, when I try to sleep I pour sweat throughout the night.

I have high blood Pressure and I take a fluid Pill.

They make it difficult to access the respite area and then they retaliate against us for using respite. They recently generated an arbitrary set of rules to ensure that the respite is as miserable as possible. The showers are extremely hot and there's only one cool down shower compared to about eighty hot showers. I Dennis Allen McNutt do hereby declare under penalty of Perjury that the foregoing is true and correct.

Dennis McNutt   7-29-19
Dennis McNutt #2230264  7-29-19

I, David Dunkin, declare that I am over 21 years old, and I'm competent to give testimony to the following which is based on personal Knowledge.

I further declare:

The summers in TDCJ are unbearable. Currently I have an infection on my toes. Sweat constantly drips down my leg & soaks the bandages. I can't sleep & experience dizziness & nausea. I often skip meals because it is so hot in the chow halls.

They haven't called cool down showers since I've been here. Out of several dozen shower heads, they all put out hot water except one. I quit going to the respite area because the guards write frivolous cases for "unofficial" rules.

I usually drop about 10 to 20 pounds every summer from the consumption of so much water & missing meals.

I also wind up with a rash every summer that the nursing staff say is caused from the heat, but they don't give any treatment for this.


I, David Dunkin, do hereby declare under penalty of perjury that the foregoing is true & correct.

David Dunk 7/29/19
David Dunkin 1006458

My name is Timothy Ware & I'm over 18 years of age, and competent to give testimony to the following which is based on personal knowledge.

I've been on the Jester III Unit since 2015. The heat during the summer drains me of all my energy. I get dizzy and can't think straight. When I try to sleep I pour sweat throughout the night. I have high blood blood pressure & I take water pills.

They make it difficult to access the respite area & they retaliate on us for using it. They recently generated an arbitrary set of rules to ensure that the respite area is as miserable as possible.

The showers are always hot, and I've yet to hear them call for cool down showers. There's about 80 shower heads & only one has cool water.

I, Timothy Ware, do hereby declare under penalty of perjury that the foregoing is true & correct.

Timothy Ware  07/29/19
Timothy Ware  #1642326

MR.KEITH M.COLE #728748
JESTER III UNIT
3-JESTER ROAD
RICHMOND,TEXAS 77406-8544
7-30-2019

CLERK
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
P.O.BOX 61010
HOUSTON,TEXAS 77208

Dear Clerk,

Enclosed you will find the original copy of a 1983 PETITION,
**MOTION TO APPOINT COUNSEL**,MOTION FOR CLASS ACTION STATUS submitted
by me on behalf of Raymond Cavitt,Harry Kerley,Kenneth Taylor,
Jimmy Black,and Justin Buxton.

Please file mark the copy of this letter and return it in the
enclosed self addressed envelope.

Also due to the fact,that I have no way to copy these documents,
could you please file mark and copy the enclosed documents and
provide me with a copy?

May God Bless You Today!!

MR.KEITH M.COLE

(Jailhouse Lawyer)

KEITH MILD COLE #00728748
("JAIL House LAWYER")
BEAUFORD H JESTER III UNIT
3 JESTER RD.
RICHMOND, TEXAS 77406-8544

United States Courts
Southern District of Texas
F I L E D
AUG 01 2019
David J. Bradley, Clerk of Court

CLERK
UNITED STATES DIS
SOUTHERN DISTRICT
POST OFFICE BOX 6
HOUSTON, TEXAS 7